In the Matter of CITY BANK FARMERS TRUST COMPANY, as Trustee under Two Deeds of Trust, Dated August 15, 1919, Made by WILLIAM W. ASTOR, et al., Petitioners. HARVEY'S GARAGES, INC., Respondent.

Supreme Court, Special Term, New York County, April 23, 1951.

*Elmer J. Hoare* and *A. L. Caccio, Jr.*, for petitioners.

*Robert Goldstein* for respondent.

HOFSTADTER, J. This is a proceeding under the Commercial Rent Law (L. 1945, ch. 3, as amd.) to fix the reasonable rent of vacant space, 209–211 East 44th and 204–208 East 45th Street, in the borough of Manhattan, occupied by the respondent, a statutory tenant, as a parking lot. Initially the petitioner sought an increase under the alternative square-foot formula, but when the 1950 amendment placed a 15% ceiling on the increase allowable under this formula the petitioner, pursuant to an order of Mr. Justice GREENBERG affirmed by the Appellate Division (*Matter of Astor [Harvey's Garages]*, 277 App. Div. 982, motion for leave to appeal denied 277 App. Div. 1037), amended its petition to request the increase under subdivision 1 of section 4 of the act (L. 1950, ch. 327). This amendment by the terms of the order permitting it is " effective as of the time of the commencement of the proceeding."

The proceeding was begun on October 14, 1949, by the petitioning trust company as trustee under two deeds of trust dated August 15, 1919. On November 30, 1949, while the proceeding

was pending the trust company in an exchange conveyed the premises to itself as trustee under an indenture of trust dated May 2, 1906, in which latter capacity it now holds them. By amendment allowed at the trial the petitioner as trustee of the 1906 trust was joined as an additional party. Thus the two owners of the premises since the commencement of the proceeding are before the court as petitioners and the final order herein fixing the reasonable rent as of the date of the commencement will inure to the benefit of each petitioner during the appropriate period of ownership. The joinder of the trustee of the 1906 trust was permitted so that the final order would have this effect and the respondent's objections to the joinder and its consequences are without merit and are overruled. The increase to be ordered will then be available to the 1906 trust as of the date it became owner and not, as argued by the respondent, as of the date of the trial when the amendment was allowed.

I find no merit in the respondent's contention that the institution of the summary proceeding by the trustee of the 1906 trust, to obtain possession of the premises for the use of a wholly owned subsidiary, in which proceeding the petitioner has thus far been successful, though no warrant has yet been issued, constitutes an election which bars the maintenance of the present proceeding to fix rent. So long as the respondent remains in possession it is a statutory tenant bound to pay a rent fixed as prescribed by law. (*Roseben Knitting Mills* v. *Great A. & P. Tea Co.*, N. Y. L. J., June 22, 1950, p. 2222, col. 1, CUFF, J.)

The petitioner's motion to conform the pleadings to the proof in respect to the two items stated in the appendix to the petitioner's brief is granted with exception to the respondent.

This brings us to a consideration of the facts. The respondent entered into possession in 1943 when the property belonged to a former owner. At first it paid a rent of $300 which was reduced to $142.50 a month when the emergency rent legislation took effect. Later a lease at $300 a month was entered into. In 1946 on petition of the former owner the annual rent of $3,600 was increased by an order of Mr. Justice LEVEY affirmed by the Appellate Division (*Matter of Greenwich Sav. Bank* [*Harvey's Garages*] 271 App. Div. 927), to $6,750. In October, 1948, in a proceeding also begun by the former owner an order was made fixing the rent as of April 1, 1948, at $9,000 a year. When this last order was made the prior owner had already contracted to sell the property to the petitioner as

trustee of the 1919 trust. The respondent is at present paying $9,000 a year, the rent fixed by the 1948 order. The petitioner now asks that the court fix a rent of not less than $30,000 a year, as of October 14, 1949, when this proceeding was commenced.

As stated, the premises are unimproved, the only structure thereon being a small shack, used by the respondent as an office. The usable area is 14,363 square feet. Though the respondent under its expired lease is permitted to sell gasoline and motor accessories it has never availed itself of this permission and the space is used exclusively as a parking lot for the storage of automobiles. It is equipped with lighting facilities and is open daily, including Sundays and holidays. While there is someone in attendance throughout the night so that, in a sense, the business is operated on a twenty-four hour basis, the evidence does not establish that night parking, as such, constitutes a substantial part of the respondent's operation.

Property such as that here involved presents a special problem in fixing rent under the emergency legislation. A return of 8% on the fair value of the property, the formula which under the statute is presumptive of a reasonable rent, is hardly appropriate in the case of such an unimproved parcel. In the applications to fix the reasonable rent of parking lots brought to my attention, the court has not adopted this formula. (*Matter of Rose* [*Williams Auction Sales Corp*], 273 App. Div. 768, affd. 297 N. Y. 978; *Matter of Appleby* [*Walsh Paper Co.*], N. Y. L. J., June 6, 1949, p. 2005, col. 4, ISIDOR WASSERVOGEL, Off. Ref., mod. 275 App. Div. 1030, order of Off. Ref. affd. 301 N. Y. 643.) More importantly, in the contested proceeding affecting this very parcel tried before Mr. Justice LEVEY in 1946, the $6,750 yearly rent fixed was reached by allowing the owner 50% of the gross return or income derived from the operation of the parking lot. Since the Appellate Division has by its affirmance of the 1946 order approved this basis (271 App. Div. 927) I adopt it as the most appropriate method of finding a reasonable rent.

The respondent's books show its cash receipts from the operation of the space. Since the trial a tabulation of these receipts for the years 1947–1950, as they appear in the books in evidence has been furnished to the court for its aid. Both counsel have approved this tabulation as a correct summary of the figures in the books. The tabulation shows cash receipts for 1949 of $21,640.50 and for 1950 of $23,994.90. While the petitioner argues that the actual gross receipts are more than those

shown in the books, this contention is not established by the evidence. Though the respondent's practices may not have been as careful as they might have been I cannot find on the proof before me that the authenticity of the records has been successfully challenged. Giving due weight to the factors stressed by the petitioner as tending to increased revenue, such as the higher rates and the longer hours of operation, the respondent's records do in fact reflect a very substantial increase in its gross receipts. The 1946 order was based on gross receipts of approximately $14,000; the records show gross receipts for 1950 of practically $24,000. In my opinion, the respondent's records of receipts furnish a more dependable measure than the petitioner's theoretical estimates of what the respondent's return should be if the space were utilized to capacity.

I, therefore, adopt as the basis on which to compute the rent the respondent's 1950 gross receipts of $23,994.90, or $24,000 and accordingly find that the reasonable rent of the premises as of October 14, 1949, was $12,000.

Though I have not taken as the rent a net return measured by a percentage of the fair value of the property, I think that for purposes of a possible review of my determination I should find such value. In reaching the value I treat the premises by themselves and not as part of the larger plottage held by the petitioner. On all the evidence I find the fair value to be $175,000. Were I fixing the rent on the basis of net return, I should disallow the $450 management fee. In my opinion this is not a permissible expense to be charged against the respondent in the case of vacant premises occupied by a single tenant. Nor do I think that the petitioner should be allowed as an operating expense the real estate taxes as increased to $10,883.60. The fair value of the property, as found by me, is substantially less than the assessed value on which the increased taxes are based.

The foregoing constitutes the decision. Settle final order.